1
2
3
4        UNITED STATES DISTRICT COURT
5       EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ZURIEL, INC., a Washington Corporation,<br><br>                  Plaintiff,<br><br>vs.<br><br>CONAGRA FOODS LAMB WESTON, INC., a Delaware Corporation,<br><br>                  Defendant. | No. 4:15-CV-5069-LRS<br><br><br>ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO AMEND |

**BEFORE THE COURT** is the Motion to Dismiss (ECF No. 4) pursuant to Fed.R.Civ.P. 12(b)(6) filed by Defendant ConAgra Foods Lamb Weston, Inc. ("Lamb Weston"). Plaintiff Zuriel, Inc ("Zuriel") filed a Response and Defendant filed a Reply. Oral argument was held on September 24, 2015. Also pending is Plaintiff's Motion for Leave to File First Amended Complaint (ECF No. 11) filed shortly before oral argument on the Rule 12(b)(6) Motion.

///

///

///

///

ORDER - 1

The Court has carefully considered the arguments of the parties, both in their briefs and at oral argument.  The Court acknowledges and apologizes to counsel and the parties for the inadvertent delay in issuing this ruling.[1]

## I.    BACKGROUND[2]

This case arises from a disagreement over an agricultural contract between a potato grower (the seller) and frozen potato product manufacturer (the buyer).  In April 2013, Zuriel entered into a contract with Lamb Weston to grow Burbank variety potatoes on 172 acres for Lamb Weston's manufacture of processed potato products.  The parties' written agreements, alleged to have been prepared by Lamb Weston, included the Base Grower Agreement (the "Base Agreement") and a Potato Purchase Agreement (the "PPA")(collectively the "Agreements").  The contract price was tied to a complex system of incentives and disincentives connected to

---

[1] Local Rule 7.1(i) provides that "[i]f the parties have not received an Order within 30 days after the motion has been heard, the parties may contact the courtroom deputy to inquire as to the status."  While the Court endeavors to be timely in all matters, the parties should never be reluctant to utilize the practice suggested by this rule.

[2] Without converting the motion to dismiss into a motion for summary judgment, the Court may consider the language of a contract where the complaint refers to such document, the document is central to Plaintiff's claim, and the parties agree upon the language. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

desired potato-quality characteristics, including percentage of bruising.  (ECF No. 1 at 10).

Zuriel alleges that after harvest (sometime in October 2013) it delivered the contracted potato crop to Lamb Weston's designated plant where inspection, sampling, and grading occurred.  This process determined Zuriel's potatoes were highly bruised and qualified as "[b]elow 40% bruise- free," a certain attribute and threshold with significance under the terms of the parties' written agreements.  (ECF No. 5, Ex. 2).

The Base Agreement states that "[c]ertain attributes of the Potatoes give rise to the Buyer's ability to reject Potatoes…" that "exceed any of the rejection standards in the respective PPA…"    (ECF No. 5 at 8). With regard to bruised potatoes, the PPA states that "[l]ots below 40% bruise free" "may be rejected, at Buyer's option."  (ECF No. 5 at 14).  The PPA also states the Buyer "shall have the following options in the event that any of such Potatoes exceed the rejection standards":

> In such instance, Buyer shall have the right, in its sole and absolute discretion, to take the following actions:
> a. Reject all or a portion of the Potatoes under this PPA **and** renegotiate the applicable pricing for such rejected Potatoes with Seller; **and/or**
> b. Extend all disincentive price adjustments on a proportionate basis for each trait that exceeds the applicable rejection standard from this PPA and complete the purchase of all or a portion of such Potatoes.

(ECF No. 5 at 14).

ORDER - 3

The PPA states that the price for the potatoes, including applicable incentives, disincentives provisions are at "Exhibit 1." Exhibit 1, for Burbank potatoes states the "bruise-free" price terms:

> The "bruise-free" price adjustment delivered to Buyer's storage grading U.S. No. 1 and No. 2 shall increase or decrease at a ratio of $.73 per ton for each 1% above or below 60% bruise-free by weight, up to a maximum increase of $16.06 per ton at 82% bruise-free or down to a maximum decrease of $14.60 per ton at 40% bruise-free. **Below 40% bruise-free reject or renegotiate**.

(ECF No. 5 at 18)(*emphasis added*).

Zuriel alleges it "repeatedly communicated" its desire to take back possession of the bruised potatoes, but that Lamb Weston ignored these requests. On December 23, 2013, over two months after discovery of the bruising, Lamb Weston processed the potatoes and then paid Zuriel $117,765.84 (without further negotiation) based upon an adjusted price of the potatoes after applying the disincentives.

Zuriel initiated this action by filing its Complaint in state court and asserting claims for breach of contract and breach of fiduciary duties. Zuriel claims that Lamb Weston was required to reject (and return) the bruised potatoes, or reject and renegotiate the purchase at a "price[] agreeable to both parties." Lamb Weston subsequently removed the action to this Court based upon diversity of citizenship and promptly filed its Motion to Dismiss. Zuriel seeks leave to amend its Complaint to add allegations and an additional claim for breach of the implied covenant of good faith and fair dealing.

ORDER - 4

Lamb Weston argues that granting Zuriel leave to amend would be futile because Zuriel's interpretation of the parties' contract is not supported by the clear and unambiguous words of their agreement.

## II.   LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 15(a)

Federal Rule of Civil Procedure 15(a) provides that leave to amend should be freely granted "when justice so requires." Fed.R.Civ.P. 15(a)(2). "The power to grant leave to amend ... is entrusted to the discretion of the district court, which 'determines the propriety of a motion to amend by ascertaining the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility.'" *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010) (*quoting William O. Gilley Enters. v. Atl. Richfield Co.*, 588 F.3d 659, 669 n. 8 (9th Cir. 2009)). "Generally, this determination should be performed with all inferences in favor of granting the motion." *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). District courts properly deny leave to amend if the proposed amendment would be futile or the amended complaint would be subject to dismissal. *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991). "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim." *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Therefore, in determining whether a proposed amendment is

futile, courts are guided by the same standards used when evaluating a Rule 12(b)(6) motion to dismiss. *See id.*

## B. Federal Rule of Civil Procedure 12(b)(6)

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as a factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

## III.    DISCUSSION

### A. Breach of Contract

The parties are in apparent agreement that Washington law governs because they

ORDER - 6

both cite chiefly to Washington authority. Under Washington law, contract interpretation is a matter of law where the contract presents "no ambiguity and no extrinsic evidence is required to make sense of the contract terms." *Rekhter v. State, Dept of Social Health Servs.*, 180 Wash.2d 102 (2014). An ambiguity exists if the language is susceptible to more than one reasonable interpretation. *Holden v. Farmers Ins. Co. of Wash.*, 169 Wash.2d 750, 756 (2010). A contract is not ambiguous simply because the parties suggest opposing meanings. *Martinez v. Kitsap Pub. Servs.*, 94 Wash.App. 935, 944 (1999). An ambiguity will not be read into a contract where it can reasonably be avoided by reading the contract as a whole. *McGary v. Westlake Investors*, 99 Wash.2d 280, 285 (1983). Rule 12(b)(6) should not be used to answer an apparent ambiguity.

Lamb Weston contends Zuriel's strict interpretation of the phrase "reject or renegotiate" in Exhibt 1- "a single phrase lifted from the generic price terms exhibit"--"goes too far" and is a "strained read" because "the generic price terms are controlled by the more detailed terms of the Agreements." (ECF No. 12 at 6-7). Lamb Weston contends paragraph 3 of the PPA (entitled "Sampling and Inspection, Grading and Weighing") *always* gives it the option to either 1) reject (and renegotiate the price or return the product); or 2) accept and pay the price based upon the disincentive price adjustments. Lamb Weston contends that though it had a *right* to reject, it instead it elected the second option and therefore could not have breached

the terms of the agreement pertaining to rejection.  Lamb Weston asks the Court to reject Zuriel's interpretation as unreasonable because it would render the second option (i.e. to accept the potatoes) unavailable once the rejection standard for bruised potatoes was met.

On the other hand, as price is an essential contract term, Zuriel interprets Exhibit 1 as controlling and having narrowed Lamb Weston's otherwise generally available options.  Lamb Weston's interpretation would render the phrase "reject or renegotiate" in Exhibit 1 meaningless and according to Zuriel, give Lamb Weston the authority, without notice to the seller, to "effectively drop the price per ton for potatoes to zero dollars ($0.00)."  (ECF No. 16 at 11). Zuriel asserts that its interpretation of the contract is also supported by extrinsic evidence in the form of course of dealing and industry custom.

The parties' agreement is susceptible to two different interpretations, each one of which is reasonably inferred from the terms of the contract.  Here, the ambiguity results from deceptively simple words like "and" and "or" and "and/or," as well as perhaps a choice in Exhibit 1 whereby precision draftsmanship was sacrificed in favor of using fewer words.  *See generally* Kenneth A. Adams & Alan S. Kaye, *Revisiting the Ambiguity of "And" and "Or" in Legal Drafting*, 80 ST. JOHN'S L. REV. 1167 (2006).

///

The Complaint and Proposed Amended Complaint sufficiently allege nonperformance of the contract and are not subject to dismissal at this stage of the proceedings.

**B. Breach of Fiduciary Duty**

Lamb Weston contends the Court should dismiss Zuriel's claim for breach of fiduciary duty because Zuriel failed to adequately plead the existence of a fiduciary relationship.  Lamb Weston contends the clash of profit interests and arms-length transaction (as the parties "sit on the opposite side of the table from each other") prevents formation of a fiduciary relationship. (ECF No. 4 at 11).

A fiduciary relationship may arise either in law, based on the nature of the relationship historically considered fiduciary in character, or in fact, where any person's relation with another is such that the "'latter justifiably expects his welfare to be cared for by the former.'"  *Liebergessell v. Evans*, 93 Wash.2d 881, 890-891 (quoting Restatement Contracts s 472 Comment C).  Washington law recognizes facts may create a fiduciary relationship in the context of commercial business relationships, however, the mere fact that the parties have engaged in business transactions or have a contractual relationship is not itself sufficient to establish a fiduciary relationship.  *See e.g.*, *Pope v. University of Washington*, 121 Wash.2d 479, 792 (1993)(citing cases). Specifically, fiduciary duties have been imposed on contracting parties "where one party has superior knowledge and thereby induces

reliance in the other party." *Id.* Washington cases have held lack of business expertise of one party or friendship between the parties as indicators. See *Liebergesell v. Evans*, 93 Wn.2d 881, 613 P.2d 1170 (1980); *Salter v. Heiser*, 36 Wn.2d 536, 219 P.2d 574 (1950); *Gray v. Reeves*, 69 Wash. 374, 125 P. 162 (1912). Where the alleged fiduciary relationship falls outside well-defined examples (i.e., physician and patient, etc), the inquiry is as to whether a fiduciary relationship exists is fact-specific and generally not subject to dismissal under Rule 12(b)(6).

Zuriel contends that its claim for breach of the implied covenant of good faith and fair dealing provides a basis for its fiduciary duty claim. (ECF No. 7 at 15). Although some courts have described the duty of good faith as fiduciary in nature, it does not itself create a fiduciary relationship. *See Kanne v. Connecticut General Life Insurance Company*, 607 F.Supp. 899 (C.D.Cal.1985), rev. on other grounds, 859 F.2d 96 (9th Cir. 1988)(applying California law).

The Complaint contains no specific allegations pertaining to the existence of a fiduciary duty. The only reference in the Proposed Amended Complaint is at paragraph 31, which alleges a breach of fiduciary duty "created upon Zuriel's reliance and trust that the terms would be honored." (ECF No. 11). This statement does not satisfy the Rule 12(b)(6) pleading standard. The only plausible inference from this allegation is the existence of a contractual relationship and the fact Zuriel trusted Lamb Weston to comply with the contract. These allegations are insufficient

as there must be something more beyond a contractual relationship and "mere friendly relations or confidence in another's honesty and integrity." *Collins v. Nelson*, 193 Wash. 334, 345, 75 P.2d 570 (1938).

Zuriel's responsive briefing contains conclusory allegations absent from its pleadings which assert that Lamb Weston possessed superior knowledge, assumed the role of advisor, had "full discretionary authority in determining the contract terms," exerted "absolute control over the entire transaction," and "received a greater economic benefit than usual…" (ECF No. 7 at 14, 18; ECF No. 16 at 19-20).  Lamb Weston's contention that these contentions are "illogical," "ludicrous," and if found to be true, would create an "unmanageable morass of implied fiduciary responsibilities," in a "simple commercial purchase transaction," (ECF No. 8 at 7), are arguments on the merits which must await another day.  Accordingly, while Zuriel's pleadings in their current form are insufficient to overcome a Motion to Dismiss, Zuriel is granted leave to amend to set forth a plausible basis for its claim based upon an alleged fiduciary relationship.

**C. Breach of Duty of Good Faith and Fair Dealing**

Zuriel's Proposed Amended Complaint (ECF No. 11) seeks to include a claim for breach of the implied covenant of good faith and fair dealing.  Zuriel claims Lamb Weston acted unreasonably given the nature of their contractual relationship when it failed to respond promptly to inquiries about the potato crop (while

maintaining control over them and the testing results), failed to cooperate in the face of a known alleged misunderstanding, and then processed the product and unilaterally set the price for the potatoes. Zuriel alleges that in a meeting with Zuriel President on January 15, 2014, Lamb Weston's agent belatedly handed it a letter dated December 20, 2013 and addressed to Zuriel, "whereby [Lamb Weston] gave notice of their intent to reject the potatoes or renegotiate the price" and "pressured [Zuriel's President] to sign the letter accepting the renegotiated pricing." (ECF No. 11, First Amended Complaint at 9). Lamb Weston argues this claim is futile because the contract did not require that it reject the potatoes or renegotiate the price.

As Lamb Weston's contractual obligations under the contract are ambiguous, the Court cannot conclude as a matter of law that Zuriel's proposed amendment to add this claim would be futile.

**D. Conversion**

Zuriel's Motion to Amend indicates it seeks to add a claim for conversion, a claim which is not set forth in the Proposed First Amended Complaint. Zuriel's proposed amended pleading contravenes Fed.R.Civ. P. 10(b)'s requirement that discrete claims should be pled in separate *counts*. It shouldn't be necessary to sift through facts to decide which causes of action are asserted. Zuriel is granted leave to amend the Complaint, but shall revise the Proposed First Amended Complaint to comply with this Order and federal pleading standards.

**IV.    CONCLUSION**

**IT IS HEREBY ORDERED**:

1.  Defendant's Motion to Dismiss (**ECF No. 4**) is **DENIED** as to the breach of contract claim and **GRANTED** as to the breach of fiduciary duty claim.

2.  Plaintiff's Motion for Leave to Amend (**ECF No. 11**) is **GRANTED** as set forth herein.  Plaintiff shall revise the *Proposed* First Amended Complaint to comply with Order and file the pleading not later than **March 31, 2016**.

3.  Defendant's Answer or responsive pleading shall be filed within **14 days after service** of the amended pleading.

4.  A telephonic Scheduling Conference will be promptly set by separate Notice.

5.  The Court urges the parties to seriously consider early resolution of this case through some form of alternative dispute resolution and the parties should be prepared to discuss this possibility at the Scheduling Conference.

**IT IS SO ORDERED**.

DATED this 16th day of March, 2016.

*s/Lonny R. Suko*

_____
LONNY R. SUKO
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 13